On the trial in the criminal court the defendant requested his Honor to charge the jury: That the transportation of Hallyburton from Morganton to Washington and return was interstate commerce, and was not the subject of indictment in the State courts. The court refused to give such instruction, and defendant excepted, and upon conviction and judgment appealed to the Superior Court. His Honor, Shaw, J., was of the opinion that the defendant was entitled to have the instruction (1074) prayed for given substantially, and remanded the case to the criminal court for a new trial.
The solicitor for the State excepted, and appealed to the Supreme Court.
This is a criminal action, tried upon the following bill of indictment:
The jurors for the State upon their oaths present: That on 1 January, A. D., 1899, the Southern Railway Company was a corporation, operating the Western North Carolina Railroad, a line of railway located wholly within the State of North Carolina, from Paint Rock, a point on *Page 697 
the boundary line between the States of North Carolina and Tennessee, to Salisbury in the said State of North Carolina, and doing the business of a common carrier in the said State of North Carolina, subject to the provision of chapter 320, Public Laws of 1891; and that the Southern Railway Company required and received of persons traveling over its said line of railway the regular first-class passenger fare of 3 1-4 cents per mile for each passenger.
And the jurors aforesaid, on their oaths aforesaid, do further present that the said Southern Railway Company, on the day and year aforesaid, at and in the county of Burke and State aforesaid, unlawfully and willfully did collect and receive from one T. N. Hallyburton a less compensation for the transportation of the said Hallyburton from the town of Morganton, in said county of Burke, a station on its line of railway, to the town of Salisbury, another station thereon, in said State, than it collected, demanded and received for the transportation (1075) of other passengers over its said line of railway from the said town of Morganton to the said town of Salisbury, for a like and contemporaneous service, in the transportation of passengers in its first-class carriages under substantially similar circumstances and conditions.
And the jurors aforesaid, on their oath aforesaid, say that the said Southern Railway Company did then and there, in the county and State aforesaid, and in the manner aforesaid, willfully and unlawfully and unjustly discriminate in the collection of passenger fares in favor of the aforesaid T. N. Hallyburton, and against other persons to whom like and contemporaneous service was rendered, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.
And the jurors aforesaid, on their oath aforesaid, do further present, that on 1 January, 1899, the Southern Railway Company was a corporation operating certain lines of railway in the State of North Carolina as a system of trade, traffic and transportation therein, and in the operation thereof was doing the business of a common carrier in the said State of North Carolina, subject to the provisions of chapter 320 of the Public Laws of 1891, and that said Southern Railway Company demanded and received a regular passenger fare of three and one-quarter cents (3 1/4) per mile for passengers traveling in its first-class carriages over its said lines of railway.
And the jurors aforesaid, on their oath aforesaid, do further present, that the Southern Railway Company on the day and year aforesaid, and at and in the county aforesaid, willfully and unlawfully did make and give undue and unreasonable preference and advantage to one T. N. Hallyburton by then and there carrying the said Hallyburton as a passenger free of charge over its line of railway, lying and situate wholly *Page 698 
within the State of North Carolina, and known as the Western North Carolina Railroad, from the town of Morganton in said county of Burke, to the town of Salisbury in said State, the said Western North (1076) Carolina Railroad being then and there one of the lines of railway aforesaid operated by the said Southern Railway Company as a part of its system aforesaid, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State.
Among other testimony T. N. Hallyburton testified as follows:
"I went on a free pass from here through Salisbury to Washington City about 15 March over the Southern Railroad. I paid no fare. Sam Huffman was on the train with me and other people. I had a free pass. I got it during the session of the Legislature. I have used another pass from the Southern Railway Company, from Raleigh to Morganton, prior to that time. I was doorkeeper of the State Senate. I rode on free pass during the session of the Legislature. The pass was signed by Col. A. B. Andrews, First Vice President of the Southern Railway Co."
Here the defendant admitted that the Southern Railway Company was operating a railroad from Morganton to Salisbury. The witness further stated:
"I paid my fare when I went to Raleigh at the middle of the session and paid full fare. The rate at that time was 3 1/4 cents per mile first-class fare, and 2 3/4 cents per mile second-class."
It was admitted by the defendant that the Southern Railway Company was a common carrier of passengers from Morganton to Salisbury, and that the road between Morganton to Salisbury was a part of its line.
On cross-examination the witness stated:
 "I got a trip ticket from Raleigh to Morganton free, and then I got a return trip ticket from Morganton to Washington and return."
(1077) It was admitted by the defendant that the regular first-class fare charged by the Southern Railway Company along its whole line and all roads it operated was three and one-fourth (3 1/4) cents regular first-class fare, and two and three-fourths (2 3/4) cents second-class fare per mile at the time these passes were issued.
There was other testimony tending to show the rates of fare usually charged, the name and length of the railroad, and by whom it was operated. The defendant was found guilty, and appealed to the Superior Court, where the following judgment was rendered:
This was a criminal action, tried at March Term, 1900, of the Western Criminal District Court for Burke County, before Stevens, J., and a jury for discrimination in the carrying of passengers as charged in the bill of indictment. *Page 699 
The jury returned a verdict of guilty and from the judgment pronounced thereon the defendant appealed to the Superior Court, which appeal was heard by Shaw, J., at chambers at Lenoir, N.C.
The defendant requested the court to charge the jury that there was a variance between the allegation and proof as to the transportation of the witness Hallyburton, the bill having charged that he was carried from Morganton to Salisbury, while the proof showed that he was carried from Raleigh to Morganton. This prayer was refused by the court, and the defendant excepted.
In the opinion of the court the variance alleged was immaterial, and there was no error in the court's refusing to give said prayer.
The defendant further requested the court to charge the jury that the transportation of said witness from Morganton to Washington and return was interstate commerce, and was not the subject of indictment in the State courts, etc.
This court refused to give said prayer, and the defendant (1078) excepted.
This Court is of the opinion that the defendant was entitled to have had this prayer given substantially, and for failure to give the same defendant is entitled to a new trial.
There were other exceptions taken by the defendant upon the trial, but as the questions involved therein may not arise upon the next trial, they are not passed upon by the court.
For the error pointed out above the defendant is entitled to a new trial, and for this purpose the case is remanded to the Western Criminal District Court of Burke County. THOMAS J. SHAW,
Judge Riding the Tenth Judicial District.
From this judgment the State appealed to this Court.
After a careful consideration we can find no authority for such an appeal. The State can appeal only in those cases allowed by statute which are limited by section 1237 of the Code to the following:
1. Upon a special verdict.
2. Upon demurrer.
3. Upon a motion to quash.
4. Upon arrest of judgment.
The case at bar comes within none of these classes, and the act establishing the Western District Criminal Court (chapter 371, Laws 1899, amended by chapter 594), contains only the following provision: "Sec. 5. That appeals shall be from the Superior Court to the Supreme Court as now provided by law for offenses originally tried in the Superior Courts and appealed to the Supreme Court." As the State would have had no appeal in the case at bar under previously existing acts, it was *Page 700 
given none under the act of 1899. The act establishing the Eastern District Criminal Court (section 6, ch. 471, Laws 1899), specially provides for an appeal by the State in cases like that at bar, but no such (1079) provision can be found as to the Western Criminal Court. Hence we must dismiss the appeal.
This action on our part is not an affirmation in any degree, express or implied, of the judgment of the court below. As we can not entertain the appeal, the principles therein decided are not before us, and, therefore, we are powerless to correct any error in the judgment, if error there be, no matter how serious or patent it may appear to us.
Appeal dismissed.
APPEAL BY THE STATE IN ANOTHER CASE BETWEEN SAME PARTIES. 35 S.E. 1039